UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WALLEYE TRADING LLC, individually and on behalf of all others similarly situated | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 18 C 05114 |
| ABBVIE, INC. and WILLIAM J. CHASE, | ) ) | Judge Charles P. Kocoras |
| Defendants. | ) | |

## ORDER

Before the Court are AbbVie, Inc., and William J. Chase's (collectively, "Defendants") on a motion to dismiss Plaintiff Walleye Trading LLC's ("Walleye") First Amended Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the motion.

## STATEMENT

For purposes of this motion, the Court accepts as true the following facts from the amended complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Walleye's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

AbbVie conducted a modified Dutch Auction ("Auction") to repurchase $7.5 billion of its common stock.[1] It set a tender range between $99-$114 per share (in $1.00 increments). AbbVie engaged Computershare as the depositary to facilitate the Auction.[2] Computershare and AbbVie communicated daily regarding the tender process.

The Auction began on May 1, 2018 and continued until midnight on May 29, 2018. At 8 a.m. EST on May 30, 2018, AbbVie issued a SCHEDULE TO (Amendment No. 7) Tender Offer Statement announcing the Auction's preliminary results. As relevant, the accompanying press release stated:

> NORTH CHICAGO, Ill., May 30, 2018 /PRNewswire/—AbbVie (NYSE: ABBV) today announced the preliminary results of its modified Dutch Auction tender offer, which expired at 12:00 midnight, New York City time, at the end of May 29, 2018. Based on the preliminary count by Computershare Trust Company, N.A., the depositary for the tender offer, a total of 75,743,313 shares of AbbVie's common stock, $0.01 par value per share, were properly tendered and not properly withdrawn at or below the purchase price of $105 per share, including 49,129,844 shares that were tendered by notice of guaranteed delivery. AbbVie has been informed by the depositary that the preliminary proration factor for the

---

[1] In a Dutch Auction, a company sets a range of prices at which it is willing to repurchase a fixed dollar amount of stock from its stockholders. Willing stockholders then choose a price within the specified range at which they would sell. The company then calculates a purchase price for the stock based on the lowest price it must spend per share such that its total expenditure is the previously specified, fixed amount.

For example, AbbVie set its purchase price at the lowest price for which it could buy back an aggregate $7.5 billion worth of stock. All shareholders who tendered at or below the purchase price would receive the purchase price, subject to potential proration. If the price was set at $99, AbbVie could buy back up to 75.8 million of the Company's shares (4.8% of shares outstanding); if at $114, AbbVie could buy back up to 65.8 million shares (4.1% of shares outstanding).

[2] Companies conducting a Dutch Auction typically engage a depositary to help facilitate the tender of shares. A depositary accepts tenders of shares on behalf of the company; maintains an account of the shares at a book-entry transfer facility; and advises the company daily on the number of shares tendered each day, the method of delivery, and cumulative totals.

tender offer is approximately 94.3 percent. In accordance with the terms and conditions of the tender offer, and based on the preliminary count by the depositary, AbbVie expects to acquire approximately 71.4 million shares of its common stock at a price of $105 per share, for an aggregate cost of approximately $7.5 billion, excluding fees and expenses relating to the tender offer. These shares represent approximately 4.5 percent of the shares outstanding. . . .

Once AbbVie announced that its purchase price would be $105, its stock rose 3.5% from its May 29, 2018 closing price of $99.47, closing at $103.01 on May 30, 2018, with a trading volume of more than 31 million shares.

Forty-six minutes after the market closed on May 30, AbbVie filed a Corrected SCHEDULE TO Tender Offer Statement. The accompanying press release stated:

NORTH CHICAGO, Ill., May 30, 2018 /PRNewswire/–AbbVie (NYSE: ABBV) today announced the preliminary results of its modified Dutch Auction tender offer, which expired at 12:00 midnight, New York City time, at the end of May 29, 2018. This update replaces the preliminary results announced at 8:00 a.m., New York City time, on May 30, 2018. This update reflects additional shares that were validly tendered by notice of guaranteed delivery, but that were erroneously omitted from the initial preliminary results provided to AbbVie by Computershare Trust Company, N.A., the depositary for the tender offer. Final results of the tender offer will be issued no later than June 4, 2018 following the expiration of the notice of guaranteed delivery period. Based on the updated preliminary count by Computershare Trust Company, N.A., the depositary for the tender offer, a total of 74,033,457 shares of AbbVie's common stock, $0.01 par value per share, were properly tendered and not properly withdrawn at or below the purchase price of $103 per share, including 52,915,569 shares that were tendered by notice of guaranteed delivery. AbbVie has been informed by the depositary that the preliminary proration factor for the tender offer is approximately 98.4 percent. In accordance with the terms and conditions of the tender offer, and based on the preliminary count by the depositary, AbbVie expects to acquire approximately 72.8 million shares of its common stock at a price of $103 per share, for an aggregate cost of approximately $7.5 billion, excluding fees and expenses relating to the tender offer. These shares

3

represent approximately 4.6 percent of the shares outstanding. . . .

In sum, the updated press release showed that AbbVie's initial statement failed to account for approximately 5,495,581 shares, of which 3,785,725 were tendered by guaranteed delivery, which led AbbVie to lower its purchase price from $105 to $103. The next trading day, AbbVie stock traded down sharply and closed at $98.94.

Walleye brings this action under Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of all those who bought, or otherwise transacted in AbbVie securities between 9:30 a.m. and 4 p.m. EST on May 30, 2018 and were damaged thereby. Walleye alleges three claims under the Exchange Act: Count I alleges Defendants violated Section 14(e) of the Exchange Act, 15 U.S.C. § 78n(e); Count II alleges that Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule10b-5; and Count III alleges that Defendant William Chase (AbbVie's CFO) violated Section 20(a) of the Exchange Act. Defendants have moved to dismiss the First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations

4

but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

Defendants urge the Court to dismiss Count I because Section 14(e) does not apply to statements made after a tender offer expires. Defendants further urge the Court to dismiss Count II because Walleye does not allege sufficient facts to support Section 10(b)'s falsity and scienter elements. Finally, Defendants urge the Court to dismiss Count III because Walleye has not adequately alleged the direct liability of any defendant.

## I. Section 10(b) of the Exchange Act and Rule 10b-5

To state a claim under Section 10(b) and Rule 10b-5, plaintiffs must allege: "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as transaction

causation; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss." *Carpenters Pension Trust Fund for N. Cal. v. Allstate Corp.*, 2018 WL 1071442 (N.D. Ill. 2018) (*citing Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)). Defendants challenge the sufficiency of Walleye's factual allegations concerning the first two elements.[3]

### A.     False Statement of Material Fact

To state a claim for securities fraud under Section 10(b), Walleye must plead that AbbVie made a false or misleading statement of material fact. *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008). Under the Private Securities Litigation Reform Act ("PSLRA"), Walleye must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1). Claiming that a particular statement was untrue is not enough. Walleye must explain, with particularity, the factual basis for its assertion that the statement was untrue. *Garden City II*, 2012 WL 1068761, at *4 (collecting cases); *Garden City I*, 2011 WL 1303387, at *20 (collecting cases).

Walleye alleges that AbbVie and Chase misrepresented the number of validly tendered shares in the morning press release AbbVie issued on May 30, 2018. That release announced that shareholders tendered 75,743,313 shares at or below a purchase

---

[3] In the alternative, Defendants contend their morning announcement on May 30, 2018, is a forward-looking statement that is not actionable under Section 10(b)'s safe-harbor provision, 15 U.S.C. § 78u-5(c)(1). The Court declines to address this argument given our finding that Walleye does not adequately allege a false statement.

price of $105, including 49,129,844 tendered by guaranteed delivery. AbbVie's subsequent press release shows those statements did not account for approximately 5,495,581 shares of which 3,785,725 were tendered by guaranteed delivery.

At this stage of the litigation, the relevant question is whether the facts alleged are "sufficient to support a reasonable belief as to the misleading nature of the statement or omission." *Rubinstein v. Gonzalez*, 241 F. Supp. 3d 841, 851–52 (N.D. Ill. 2017). The factual allegations must show that the statements were false when made and not incorrect in retrospect. *Higginbotham v. Baxter International Inc.*, 495 F.3d 753, 759–60 (7th Cir.2007).

The factual allegations in this complaint do not sufficiently show that AbbVie's morning press-release statements were false when made. Walleye alleges that "Computershare notified [AbbVie] of the error *after* the Initial Tender Offer Statement was issued." (emphasis added). This allegation contradicts any reasonable inference that AbbVie knew its statements were false when made. And the mere fact that AbbVie updated its first statement to reflect omitted shares does not show falsity-when-made but rather that AbbVie's statement was incorrect in retrospect. *See Higginbotham*, 495 F.3d at 759–60; *Garden City I*, 2011 WL 1303387, at *20. The Court, therefore, finds that Walleye fails to sufficiently allege a false statement.

B.  **Scienter**

Section 10(b)'s scienter element is met where the defendant "either knew the statement was false or was reckless in disregarding a substantial risk that it was false."

7

*Makor Issues & Rights v. Tellabs Inc.*, 513 F.3d 702, 704 (2007). The PSLRA creates a heightened pleading standard, requiring the plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

Walleye contends that the complaint alleges AbbVie had full access to all of Computershare's information (including backup materials) such that it could verify the accuracy of the preliminary count. Given this allegation, Walleye argues that AbbVie's failure to verify Computershare's count is evidence of scienter, i.e., that AbbVie either knew its initial statement was false or was reckless in disregarding a substantial risk that it was false. But a careful reading of Walleye's relevant allegations (¶¶ 27-33) reveals they are too general for PSLRA standards.

The allegations concern the "typical" practice by depositaries to advise issuers of the number of shares duly tendered on each day, their delivery methods, the number of shares withdrawn, and the cumulative totals for each day. Such general allegations do not satisfy the PSLRA's heightened pleading standard, which requires Walleye to "state with *particularity* facts giving rise to a strong inference that the defendant[s] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). Absent factual allegations particular to AbbVie, the scienter element is not sufficiently plead. The Court, therefore, finds the complaint fails sufficiently to allege scienter.

## II. Section 14(e) of the Exchange Act

"Section 14(e) of the Williams Act is a broad antifraud provision modeled after SEC Rule 10b-5, and is designed to ensure that *shareholders confronted with a tender offer* have adequate and accurate information *on which to base the decision whether or not to tender their shares*." *Panter v. Marshall Field & Co.*, 646 F.2d 271, 283 (7th Cir. 1981) (affirming dismissal of claim under Section 14(e) where shareholders were not presented with the opportunity to rely on alleged deception when deciding whether to tender their shares) (emphasis added). AbbVie contends that Section 14(e) is inapplicable to this case because the allegedly fraudulent statement was made after the tender offer's deadline expired. Walleye responds that Section 14(e) applies broadly and "it is enough that the fraud alleged 'coincided'" with the transaction. The Court disagrees.

Once the deadline for a tender offer expires, the shareholders are no longer confronted with it. Thus, any fraudulent statement made after a tender offer expires cannot be used as the basis for a Section 14(e) claim for "it was impossible for the plaintiffs to rely on any alleged deception in making the decision to tender or not." *Panter*, 646 F.2d at 283.

Walleye's attempts to distinguish *Panter*—where the tender offer was withdrawn as opposed to becoming effective—are not convincing. 646 F.2d 271. "[S]ection 14(e) is intended to protect shareholders from making a *tender offer decision* on inaccurate or inadequate information." *Panter*, 646 F.2d at 283 (emphasis

9

added).  Accordingly, whether the tender offer was effective or withdrawn is irrelevant where the end result is the same, i.e., shareholders had no opportunity to base a tender offer decision on a misstatement.  The Court, therefore, finds Walleye failed to state a claim under Section 14(e).

## III. Section 20(a) of the Exchange Act

In order to allege a Section 20(a) claim, the plaintiff must allege: (1) a primary securities violation; (2) that the individual defendant exercised general control over the individual or organization that committed the violation; and (3) that the individual defendant "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised."  *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992); *Zurich Capital Markets, Inc. v. Coglianese*, 388 F. Supp. 2d 847, 866 (N.D. Ill. 2004).  Having found that Walleye fails to allege a primary securities violation by Chase or AbbVie, the Court finds that Walleye fails to state a claim under Section 20(a).

## CONCLUSION

For the reasons mentioned above, the Court grants Defendants' motion to dismiss.  It is so ordered.

Dated:  09/17/2019

_____

Charles P. Kocoras
United States District Judge